IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

THOMAS JAMES MAHONE, :
:
      Plaintiff, :
:
VS. : CASE NO. 4:15-CV-180-CDL-MSH
:
MIDTOWN MEDICAL CENTER, :
*et al.*, :
:
      Defendants. :
_____

## ORDER AND
## REPORT AND RECOMMENDATION

Presently pending before the Court are Plaintiff's motions to amend (ECF Nos. 38, 40, 43), motion to consolidate (ECF No. 53), and motion for summary judgment (ECF No. 53). Also pending are Defendants' motion for summary judgment (ECF No. 32) and motion to strike (ECF No. 55). For the reasons explained below, Plaintiff's motion to consolidate and Defendants' motion to strike are denied. It is recommended that Plaintiff's motions to amend and motion for summary judgment be denied and Defendants' motion for summary judgment be granted.

## BACKGROUND

Plaintiff states that on November 12, 2013, he "was dropped off at the emergency room at Midtown Medical Center (MMC) by an unknown drug addict whom he had met at a crack house and with whom he had smoked crack cocaine with." Am. Compl. 4, ECF No. 16. Plaintiff was admittedly high on cocaine and entered the emergency room

to "'get some help' for his drug problem." *Id.* Plaintiff informed a hospital security guard, "John Doe #2," that he "had a drug problem and that he felt suicidal." *Id.* John Doe #2 thereafter filled out an application for Plaintiff's admission into the hospital "due to the fact Plaintiff was too high on drugs to apply willingly." *Id.* Plaintiff was admitted into the hospital and assigned to the care of John Doe #1, the attending physician. *Id.* Plaintiff contends that he was "invalidly admitted into Midtown Medical Center" because he did not himself "sign any forms authorizing his voluntary admission neither did he sign any forms consenting to the authorization of treatment nor did he sign any forms that informed him of his rights and responsibilities as a psychiatric patient, specifically his admission and discharge rights." Compl. 6, ECF No. 1; Am. Compl. 5.

Plaintiff voluntarily produced a urine sample to the hospital but alleges he requested to leave the hospital when nurse Defendant Jane Doe #1 "refused to accept his initial urine sample." Am. Compl. 5. Plaintiff "was told he could not leave." *Id.* At that point, Plaintiff contends that Jane Doe #1 and John Doe #2 (the nurse and attending physician) "ordered six (6) hospital security guards, one deputy sheriff and three nurses to control, detain, and retain Plaintiff" and then subjected him to an involuntary urinary catheterization to obtain a second urine sample. *Id.* Plaintiff further states that he attempted to refuse the catheterization and asked for more time to produce a voluntary sample by urinating in a cup, but he was denied this opportunity. *Id.*

After a preliminary review of Plaintiff's Complaint and Amended Complaint, the forced catheterization claims under § 1983 were allowed to proceed against Defendants Nicholls, Foster, and Kaiser. Additionally, Plaintiff's state law claims were allowed to

2

proceed against Defendants Nicholls, Foster, and Kaiser, and MMC. Defendants moved for summary judgment. Plaintiff filed an opposition and cross motion for summary judgment along with a motion to consolidate. He also seeks leave to amend. These motions are ripe for review.

## DISCUSSION

**I.  Motions for Summary Judgment**

Plaintiff complains that Defendants Nichols, Foster, Kaiser and MMC are liable under 42 U.S.C. § 1983 for subjecting him to "battery, false imprisonment, emotional distress, bodily restraint, excessive force, unreasonable search and seizure, unwanted medical treatment, and violation of his Emergency Medical Treatment Active Labor Act rights." Pl.'s Br. in Supp. of MSJ 3, ECF No. 53-3. In other words, Plaintiff continues to claim both that Defendants improperly forced medical treatment on him in violation of the Constitution and that they denied him medical treatment under EMTALA. *Id.* at 7. The only claims that are still pending after preliminary review are § 1983 claims against Defendants Nichols, Foster, and Kaiser for unreasonable search and seizure and violation of due process and the state law claims against Defendants Nichols, Foster, Kaiser and MMC. Defendants move for summary judgment claiming, *inter alia*, that they are not state actors. Plaintiff cross moves for summary judgment claiming that he has established each element of his claims and that he is entitled to judgment as a matter of law.

3

A.     Standard of Review

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

B.     Undisputed Material Facts

Plaintiff states that he was dropped off at the emergency room at Midtown Medical Center by "an unknown drug addict." Pl.'s Statement of Undisputed Facts [hereinafter "Pl.'s SMF"] ¶ 1, ECF No. 53-4 at 2. Plaintiff approached a hospital guard and told the guard that "he had a drug problem and he felt suicidal." *Id.* ¶ 2. That guard then filled out a hospital admission form for Plaintiff because he perceived that Plaintiff "was too high on drugs to apply willingly." *Id.* ¶ 3. Plaintiff wanted to be admitted as a "psychiatric patient suffering from suicide ideations, depression, PTSD, [and h]allucinations[.]" *Id.* ¶ 4. Plaintiff states that he did not seek admission for a drug problem. *Id.* Plaintiff did not sign any admission forms. *Id.*

Plaintiff avers that after he was admitted he told nurse Jamila Harris "that he had a plan to kill himself and that he would take an overdose of cocain[e]." Pl.'s SMF ¶ 6. He

also told Nurse Harris that he "intended to build a bomb to blow up Columbus." Harris Aff. ¶ 4, ECF No. 32-2. Around two o'clock in the morning, Plaintiff was asked to provide a urine sample. Pl.'s SMF ¶ 7. The attending physician, Dr. Thomas Demaro, requested the urine sample in order to determine what drugs were in Plaintiff's system before rendering medical treatment. Harris Aff. ¶ 5. Dr. Demaro ordered a catheterization in order to obtain the urine sample. *Id.* ¶ 6.

Plaintiff states that he "urinate[d] in the urinal and give it to [Nurse Harris] when she came back into the room[,] but she refuse to accept plaintiff's initial urine sample." Pl.'s SMF ¶ 7. Plaintiff then requested to be discharged, *id.*, and refused multiple requests to provide a urine sample via a catheter. *Id.* ¶ 20. Defendants Nichols, Foster, and Keiser restrained Plaintiff while Nurse Harris obtained the urine sample. Harris Aff. ¶ 7. Defendant Nichols used force on Plaintiff "in order to get him to submit to the catheter" by "app[lying] pressure points techniques[.]" Pl.'s SMF ¶ 22. Plaintiff also states that Defendant Nichols restrained him by "choking" him. *Id.* Plaintiff admits that Midtown Medical Center is a "private[ly] owned, non-profit corporation[.]" *Id.* ¶ 24.

C.    Defendants' Motion for Summary Judgment—State Actors

A claim under section 1983 requires a showing of "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005). "Private conduct may be fairly attributable to the state where: (1) the deprivation [was] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the state is responsible, and (2) the

party charged with the deprivation . . . may fairly be said to be a state actor." *Cohen v. World Omni Fin. Corp.*, 457 F. App'x 822, 828 (11th Cir. 2012) (internal quotation marks and citation omitted) (alterations in original). The Eleventh Circuit uses three tests to determine whether a defendant is a state actor: "(1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test." *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993).

"The public function test limits state action to instances where private actors are performing functions traditionally the exclusive prerogative of the state." *Id.* (internal quotation marks and citation omitted). "[A] mere showing that a private person performs a public function is not enough to establish state action." *Langston v. ACT*, 890 F.2d 380, 384 (11th Cir. 1989). "The state compulsion test limits state action to instances where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *Cohen*, 457 F. App'x at 829 (internal quotation marks and citation omitted). The state must have exercised such "coercive power or [have] provided such significant encouragement, either overt or covert, that the private actor's choice must be deemed to be that of the state." *Langston*, 890 F.2d at 385. Finally, for the nexus/joint-action test to be met, the state must have "intertwined itself with the private actor to such an extent that the state was a joint participant in the enterprise." *Id.*

Plaintiff states that Defendants Nichols and Foster "worked at or were under contract to work at Midtown Medical Center" and that Defendant Keiser is a sheriff's deputy "who work[s] at Columbus Ga. Sheriff Dept." Am. Compl. 3, ECF No. 16. Plaintiff further explains that Defendant Nichols is also employed by the sheriff's

6

department, "but at the time of the events giving rise to this instant action he was working at Midtown Medical Center as a hospital security guard." *Id.* In other words, Plaintiff agrees that at the time Defendants Nichols, Foster, and Keiser restrained him in order to allow Nurse Harris to take a urine sample, Defendants were acting as employees of MMC and not as sheriff's deputies. He argues that these Defendants are state actors because they are employees of MMC—which he contends is a so intertwined with the Medical Center Hospital Authority, that it is a state actor. *See, e.g.,* Pl.'s Reply in Supp. of MSJ 2-3, ECF No. 57.

"Under the nexus/joint action test, each case must be analyzed on its own facts to determine whether the interdependence between the private and state entities reflects sufficient state involvement to sustain a § 1983 claim." *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000). Furthermore, "[t]o sustain a § 1983 claim under the nexus/joint action test, the symbiotic relationship between the public and private entities must involve the constitutional violation." *Id.* In the context of a hospital and a public hospital authority, the Eleventh Circuit refused to find sufficient state involvement when:

> the private and public entities were separate and distinct under the law; the private entity had sole discretion to hire and fire employees and was the governing body of the hospital and medical staff; the private entity was responsible for maintenance and repair of the medical facility at its own expense; the private entity was responsible for maintaining insurance and for providing a financial report to the auditor; the private entity had the right and authority to make and enforce rules, regulations, and safety considerations; and the private entity agreed to indemnify the public entity from liability.

*Id.* (discussing factors considered in *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 841 (11th Cir. 1993)).

7

Similarly, in *Patrick v. Floyd Medical Center*, the Eleventh Circuit found that there was not sufficient state involvement between the Hospital Authority of Floyd County (HAFC) and Floyd Healthcare Management, Inc., (FHM) which operated the Floyd Medical Center. 201 F.3d at 1315-16. In so concluding, the court considered that: "FHM and HAFC are distinct legal entitles[;]" HAFC "receives direct financial benefits from FHM[;]" "HAFC agreed to indemnify FHM for any liability arising from its management of Floyd Medical Center[;]" "FHM did not assume any of HAFC's liabilities[;]" "FHM had sole responsibility over personnel issues[;]" and that FHM "managed and ran the hospital on a daily basis; procured insurance; assumed maintenance (albeit not at FHM's expense); and provided financial audits and reports." *Id.* As a final and "critical" fact, the court found that there was no evidence that HAFC had any authority over or involvement in the alleged constitutional violation. *Id.* at 1316.

Here, the Medical Center Hospital Authority (MCHA) is a public hospital authority formed under Georgia law. It "owns Midtown Medical Center's premises and leases the premises to Midtown Medical Center." Chandler Aff. ¶ 4, ECF No. 41-1. The Medical Center, Inc., is a distinct legal entity that operates as the Midtown Medical Center. *Id.* ¶ 2. MMC "has exclusive control over day-to-day operations of the hospital, which includes hospital management and patient care." *Id.* ¶ 5. MCHA "has no employees and does not maintain any control over [MMC's] management, patient care[,] or any other daily business[,]" *Id.* ¶ 5, and MCHA did not participate in the decision to catheterize Plaintiff. *See, e.g.,* Harris Aff. 6 ("The attending physician, Dr. Thomas Demaro, using his medical judgment and in an effort to treat Mr. Mahone, ordered a

8

catheterization[.]")  Thus, the relationship between MCHA and MMC "does not present the nexus or joint action sufficient to constitute state action[,]" and Defendants cannot be found to be state actors solely by virtue of their employment with MMC. *Floyd*, 201 F. 3d at 1316.

Plaintiff admits that Defendants were operating as private security guards for MMC at the time of the catheterization. Applying the same test above to each Defendant results in the same outcome—a lack of a state action. Defendants were directed by Dr. Demaro to restrain Plaintiff to "ensure a safe procedure" while medical staff obtained a urine sample. Nichols Aff. ¶¶ 5-6, ECF No. 32-7; Foster Aff. ¶¶ 5-6, ECF No. 32-8; Kaiser ¶¶ 5-6, ECF No. 32-9. The urine sample was "ordered solely for medical purposes to ensure proper treatment of [Plaintiff,]" and was "never used against [him] in criminal proceedings[.]" Nichols Aff. ¶ 7; Foster Aff. ¶ 7; Kaiser ¶ 7. Defendants did not participate in the decision to catheterize Plaintiff nor did they "have the authority to influence Dr. Demaro's medical decisions." Nichols Aff. ¶ 6; Foster Aff. ¶ 6; Kaiser ¶ 6. In this context, there is no nexus between the state and Defendants—Defendants are thus not state actors and Plaintiff cannot maintain a cause of action against them under § 1983. Defendants' motion for summary judgment should be granted. For the same reasons, Plaintiff's motion for summary judgment should be denied.

D. State Law Claims

As explained above, it is recommended that Defendants' motion for summary judgment be granted for Plaintiff's claims pursuant to § 1983. The Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over Plaintiff's

state law claims. *See, e.g., Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). It thus is recommended that Plaintiff's state law claims be dismissed without prejudice.

## II. Plaintiff's Motions to Amend

Plaintiff filed two motions seeking leave to amend (ECF Nos. 38, 43) and one amended complaint (ECF No. 40). At this stage in the case, Plaintiff must seek permission to amend pursuant to Rule 15(a)(2), which should be "freely given when justice so requires." Here, Plaintiff's motions to amend should be denied because the amendments would be futile. *See, e.g., Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) ("[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.")

Plaintiff seeks leave to amend to: (1) amend paragraph six of his amended complaint filed at ECF No. 40; (2) add MCHA as a party; (3) add MCHA board members as parties; (4) add Jane Doe administrative nurses as parties; (5) add Nurse Harris and Dr. Demaro as parties; (6) add claims for excessive force against Nurse Harris and Defendants Nichols, Foster, and Kaiser; (7) add an EMTALA claim against MCHA. Initially, as explained above, Plaintiff cannot maintain actions pursuant to § 1983 against MMC or its employees. Thus, it is futile to allow Plaintiff to amend to add claims against administrative nurses, Nurse Harris, or Dr. Demaro. It is similarly futile to add claims for excessive force against Defendants Nichols, Foster, and Kaiser as they were not state actors when Plaintiff was catheterized.

10

Finally, it is futile to add claims against MCHA as Plaintiff has failed to state a claim against MCHA. Plaintiff asserts claims against MCHA merely because it leases the premises to MMC. He mistakenly assumes that MCHA controls or influences the day-to-day operations of MMC. However, as the evidence discussed above shows, MMC "has exclusive control over day-to-day operations of the hospital, which includes hospital management and patient care." Chandler Aff. ¶ 5. Moreover, as previously explained to Plaintiff, "[a] governmental entity cannot be liable under § 1983 for the actions of its employees on a theory of respondeat superior." *Connor v. Halifax Hosp. Med. Ctr.*, No. 01-16207, 2002 WL 32290997, at *4 (11th Cir. June 26, 2002) (per curiam) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Plaintiff has not alleged that there is a policy created by MCHA that caused a constitutional violation or that MCHA otherwise participated in a constitutional violation. Plaintiff's motions to amend should thus be denied as futile.

### III. Plaintiff's Motion to Consolidate

Along with his motion for summary judgment, Plaintiff moves to consolidate this case with a later filed action—*Mahone v. The Medical Center, Inc.*, No. 4:17-cv-113 [hereinafter *Mahone II*]. Mot. to Consolidate 1, ECF No. 53-1 at 21. Although the claims in *Mahone II* arise out of the same transaction at issue in this case, Plaintiff asserts additional claims against additional defendants. The Rule governing consolidation "is permissive and vests a purely discretionary power in the district court." *Young v. City of Augusta*, 59 F.3d 1160, 1168 (11th Cir. 1995)(noting that "although consolidation under Rule 42(a) may be warranted because of a common issue of law or fact, it is not

11

required"); *see also* Fed. R. Civ. P. 42(a).  Due to the differences in parties and in procedural posture, and the late stage of litigation, this Court exercises its discretion and denies Plaintiff's motion to consolidate.  The cases shall proceed separately.

## IV. Defendants' Motion to Strike

Defendants move to strike two affidavits filed with Plaintiff's motion for summary judgment—the affidavits of Ollie Mahone and Gregory Whitaker.  Although the Court agrees that these affidavits contain testimony that is otherwise inadmissible, the Court declines to strike them from the record at this time.  The Court is able to consider the admissibility of presented evidence and has not considered evidence which would be inadmissible at trial in ruling on the parties' motion for summary judgment.  *See, e.g., Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1313 (11th Cir. 2014) ("Evidence inadmissible at trial cannot be used to avoid summary judgment.").  Consequently, Defendants' motion is denied.

## CONCLUSION

For the reasons explained above, Plaintiff's motion to consolidate (ECF No. 53) and Defendants' motion to strike (ECF No. 55) are denied.  It is recommended that Plaintiff's motions to amend (ECF Nos. 38, 40, 43) and motion for summary judgment (ECF No. 53) be denied and that Defendants' motion for summary judgment (ECF No. 32) be granted.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a

de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 24th day of August, 2017.

/s/ Stephen Hyles  
UNTED STATES MAGISTRATE JUDGE